1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11
----oo0oo----

12

DELIA WILSON, on behalf of
13   herself and all others
similarly situated,
14
             Plaintiffs,
15
       v.
16
CONAIR CORPORATION,
17
             Defendant.
18

CIV. NO. 1:14-00894 WBS SAB

MEMORANDUM AND ORDER RE: MOTIONS
FOR CLASS CERTIFICATION;
EXCLUSION OF EXPERT EVIDENCE;
AND SANCTIONS

19
----oo0oo----
20

21        Plaintiff Delia Wilson brought this putative class

22   action against Conair Corporation, a health and beauty supply

23   company, asserting that it has allegedly failed to follow

24   standard policies and procedures for protecting consumers from a

25   defective line cord in its styling irons and failed to comply

26   with reporting laws.  Presently before the court is plaintiff's

27   motion for class certification.  (Docket No. 124.)

28

1

1    I.    Factual and Procedural Background

2            On February 12, 2014, plaintiff suffered injuries to

3    her eye, face, and chest when the power cord on her Conair

4    curling iron began to crackle and emit sparks.  (First Am. Compl.

5    ("FAC") at 4 (Docket No. 121).)  She was diagnosed with a corneal

6    abrasion that continues to require treatment.  (Id.)  Plaintiff

7    received this styling iron from defendant in 2010 as a free

8    replacement for her prior styling iron, on which the on/off

9    button had stopped functioning.  She used the styling iron three

10   to four times a week for about four years.  (Id. at 3; Hurst

11   Decl. Ex. C, Wilson Dep. at 92:10-17, 93:9-12 (Docket No. 124-

12   2).)  Plaintiff alleges that the power cords on defendant's

13   styling irons are defective and that, despite having knowledge of

14   this defect, defendant failed to warn consumers of the hazard or

15   to report it to the Consumer Product Safety Commission ("CPSC").

16   (FAC at 1, 8.)

17           Plaintiff asserts the following causes of action in her

18   FAC on behalf of herself and the proposed class members: (1)

19   violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.

20   Code §§ 1750-1784; (2) unfair business practices to conceal the

21   power cord defect from consumers and false and misleading

22   advertising in violation of California's Unfair Competition Law

23   ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, 17500-17509; and

24   (3) breach of implied warranty, Cal. Com. Code § 2314.  Plaintiff

25   also asserts the following individual causes of action: (4)

26   strict products liability due to design or manufacture defect;

27   (5) strict products liability due to failure to warn; and (6)

28

1   negligence.[1]

2          Plaintiff seeks to represent a class that consists of:

3   "All persons who purchased Conair Styling Irons in California."

4   (Id. at 10.)  The parties agreed to define styling irons as all

5   curling irons, straightening irons, and curling brushes

6   manufactured by defendant and purchased by consumers in

7   California on or after January 1, 2005 that contain a SPT-1 AWG

8   #20 cord and a LM-81 strain relief.  (Hurst Decl. Ex. B, Def.'s

9   Responses to Pl.'s First Set of Interrogs. at 5 (Docket No. 124-

10  4).)  The class excludes those who purchased styling irons for

11  resale purposes.  (FAC at 10.)  Plaintiff believes the class

12  contains "thousands of members" but does not know the precise

13  number.  (Id.)[2]

14  II.  Discussion

15         For a class to be certified, a plaintiff must satisfy

16  each prerequisite of Federal Rule of Civil Procedure 23(a) and

17  must also establish an appropriate ground for maintaining class

18  actions under Rule 23(b).  Fed. R. Civ. P. 23.  "The party

19  ────────────────

20       [1]   Plaintiff voluntarily dismissed her seventh cause of
    action for negligent infliction of emotional distress.  (Docket
    No. 148.)  The parties stipulated that it would be dismissed with
21  prejudice and without an award of attorneys' fees, costs, or
    disbursements to either party.  (Id.)
22       [2]   The court did not consider the additional evidence
    plaintiff submitted with her reply as it is "improper for a
23  moving party to introduce new facts or different legal arguments
    in the reply brief than those presented in the moving papers"
24  without providing the opposing party an opportunity to respond.
    Jones v. Balt. Life Ins. Co., Civ. No. S-06-1505 LKK KJM, 2007 WL
25  1713250, at *9 (E.D. Cal. June 12, 2007).  Furthermore, the
    additional evidence would not alter the court's conclusions.
26  Accordingly, defendant's motions to strike this evidence or to be
    provided an opportunity to respond, (Docket Nos. 143, 145), are
27  denied as moot.

28

1  seeking certification has the burden of affirmatively

2  demonstrating that the class meets the requirements of [Rule

3  23]."  Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th

4  Cir. 2012) (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct.

5  2541, 2551 (2011)).

6    A. Rule 23(a)

7       Rule 23(a) restricts class actions to cases where:

8       (1)  the  class  is  so  numerous  that  joinder  of  all
         members  is  impracticable;  (2)  there  are  questions  of
9        law  or  fact  common  to  the  class;  (3)  the  claims  or
         defenses  of  the  representative  parties  are  typical  of
10       the  claims  or  defenses  of  the  class;  and  (4)  the
         representative  parties  will  fairly  and  adequately
11       protect the interests of the class.

12  Fed. R. Civ. P. 23(a).  These requirements are more commonly

13  referred to as numerosity, commonality, typicality, and adequacy

14  of representation.  The court must conduct a "rigorous analysis"

15  to ensure the prerequisites of 23(a) have been satisfied and this

16  "will entail some overlap with the merits of the plaintiff's

17  underlying claim."  Dukes, 131 S. Ct. at 2551 (citation omitted).

18  Because the court finds that plaintiff meets neither the

19  typicality nor adequacy of representation requirements, it does

20  not address the requirements of numerosity or commonality.

21    1. Typicality

22       Typicality requires that the named plaintiff have

23  claims "reasonably coextensive with those of absent class

24  members," but their claims do not have to be "substantially

25  identical."  Hanlon, 150 F.3d at 1020.  The test for typicality

26  "is whether other members have the same or similar injury,

27  whether the action is based on conduct which is not unique to the

28  named plaintiffs, and whether other class members have been

4

1   injured by the same course of conduct."  Hanon v. Dataproducts

2   Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted); see

3   also O'Connor v. Boeing N. Am., Inc., 180 F.R.D. 359, 373-74

4   (C.D. Cal. 1997) (finding no typicality where the class

5   representatives were focused on treatment of their existing

6   cancer and their individual personal injury claims whereas the

7   non-diseased class members were focused on recovering costs of

8   monitoring latent diseases); Gartin v. S&M NuTec LLC, 245 F.R.D.

9   429, 434-35 (C.D. Cal. 2007) (finding no typicality when the

10  plaintiff was seeking relief for her dog's existing injuries

11  while other class members would seek costs for monitoring their

12  dogs' health to ensure no injuries occurred in the future).

13        Class certification is inappropriate "where a putative

14  class representative is subject to unique defenses which threaten

15  to become the focus of the litigation."  Hanon, 976 F.2d at 508.

16  "To be typical, a class representative . . . must establish that

17  she is not subject to a defense that is not 'typical of the

18  defenses which may be raised against other members of the

19  proposed class.'"  In re NJOY, Inc. Consumer Class Action Litig.,

20  120 F. Supp. 3d 1050, 1098 (C.D. Cal. 2015) (citation omitted).

21        While plaintiff and the proposed class members were all

22  allegedly injured by defendant's misrepresentations about the

23  safety of the styling irons and failure to report the alleged

24  defect to the CPSC, plaintiff is also asserting several

25  individual personal injury claims that are not coextensive with

26  those of the class.  In fact, plaintiff's counsel has conceded

27  that the class action portion of this lawsuit would exclude any

28  recovery for personal injuries or even restitution.  However,

1  plaintiff individually contends that she "experienced

2  unreasonably dangerous effects, and/or unnecessary physical

3  injuries, damaged and/or destroyed property, and has incurred

4  financial damage, loss of wages and/or earning capacity, medical

5  expenses and injury, including mental anguish and emotional

6  distress."  (FAC at 20.)  As in O'Connor and Gartin, plaintiff's

7  claims are therefore atypical as they are based at least in part

8  on injuries different from those suffered by the class members,

9  many of whom have not yet experienced line cord rupture or any

10  physical injuries, and she is seeking individual damages.

11        Plaintiff will also face unique defenses on the class-

12  wide CLRA and UCL claims that defeat typicality.  For example,

13  defendant contends that it will argue at trial that plaintiff,

14  unlike other class members, does not have standing to bring CLRA

15  and UCL claims because she did not purchase her styling iron but

16  rather received it as a free replacement for another product.

17  (Def.'s Opp'n at 31 (Docket No. 130).)  "In cases involving

18  safety defects, courts have repeatedly found that allegations

19  that Plaintiffs suffered economic loss because they would not

20  have purchased the product or would have paid less for it had the

21  defect been disclosed are sufficient to establish standing to sue

22  under CLRA and UCL."  Corson v. Toyota Motor Sales, U.S.A., Inc.,

23  Civ. No. 2:12-08499 JGB VBK, 2013 WL 10068136, at *7 (C.D. Cal.

24  July 18, 2013); see also Backus v. Gen. Mills, 122 F. Supp. 3d

25  909, 921 (N.D. Cal. 2015) (finding the plaintiff had standing

26  because he lost money from purchasing the defendant's products

27  that were detrimental to his health); Cal. Civ. Code § 1770(a)

28  (proscribing "unfair methods of competition and unfair or

1  deceptive acts or practices undertaken by any person in a

2  transaction intended to result or which results in the <u>sale or</u>

3  <u>lease of goods</u> or services to any consumer" (emphasis added)).

4          Because plaintiff received her styling iron for free,

5  defendant will argue, she cannot claim she was deceived into

6  purchasing a styling iron based on defendant's misrepresentations

7  and false advertising or that she was injured by spending money

8  on this dangerous product.  While plaintiff purchased her

9  original styling iron, defendant will argue that its on/off

10  switch failure is outside the scope of the proposed class

11  definition and any claims related to this iron are also barred by

12  the three year statute of limitations on CLRA claims.  (Def.'s

13  Opp'n at 31 & n.10.)  There is a significant danger that

14  plaintiff will be preoccupied with this defense unique to her.[3]

15          Additionally, because plaintiff seeks to proceed under

16  Rule 23(b)(2), injunctive relief lies at the heart of her class

17  action.  Yet, because plaintiff is no longer using a Conair

18  styling iron, she is not typical of class members who continue to

19  use their styling irons and would therefore have standing to seek

20  injunctive relief.  To establish standing for prospective

21  injunctive relief, a plaintiff must demonstrate that she "has

22  suffered or is threatened with a 'concrete and particularized'

23  legal harm, coupled with 'a sufficient likelihood that [s]he will

24  _____

25          [3]    The court acknowledges that plaintiff's general
    argument that the statute of limitations was tolled for class
26  members falling outside the CLRA statutory period is not unique
    to her and does not defeat typicality.  (See Pl.'s Reply at 7.)
27  Any tolling argument that might be made with respect to her
    original styling iron with the malfunctioning on/off switch,
28  however, would be unique to plaintiff.

1    again be wronged in a similar way."  Bates v. United Parcel

2    Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007).  Plaintiff cannot

3    establish a likelihood of future harm because she no longer uses

4    a Conair styling iron and has expressed no intent to purchase one

5    in the future.  See, e.g., In re Yahoo Mail Litig., 308 F.R.D. at

6    588 ("[T]he 'likelihood of future injury' requirement under

7    Article III may be satisfied where a consumer 'allege[s] that

8    [s]he intends to purchase the products at issue in the future.'"

9    (citation omitted) (alteration original)); Dukes, 131 S. Ct. at

10   2560 (finding half of the class members were no longer employed

11   by Wal-Mart and therefore lacked standing to seek injunctive or

12   declaratory relief against Wal-Mart's employment practices);

13   Balasanyan v. Nordstrom, Inc., 294 F.R.D. 550, 562 (S.D. Cal.

14   2013) (finding a subset of plaintiffs had no standing to pursue

15   injunctive relief and their claims were therefore not typical of

16   the proposed class).

17          Both because of plaintiff's personal injury claims and

18   the unique standing defenses that could be raised against her,

19   the court must find plaintiff fails to satisfy the typicality

20   requirement of Rule 23(a).

21       2. Adequacy

22          To resolve the question of adequacy, the court must

23   make two inquiries: "(1) do the named plaintiffs and their

24   counsel have any conflicts of interest with other class members

25   and (2) will the named plaintiffs and their counsel prosecute the

26   action vigorously on behalf of the class?"  Hanlon, 150 F.3d at

27   1020.  These questions involve consideration of a number of

28   factors, including "the qualifications of counsel for the

1   representatives, an absence of antagonism, a sharing of interests

2   between representatives and absentees, and the unlikelihood that

3   the suit is collusive." Brown v. Ticor Title Ins., 982 F.2d 386,

4   390 (9th Cir. 1992).

5          The court does not address the qualifications of

6   counsel.  However, as discussed above, plaintiff is not only

7   seeking injunctive relief on behalf of the class but also

8   individual personal injury damages.  There is a substantial risk

9   that plaintiff will therefore have different priorities and

10  litigation incentives than the class members.  She could, for

11  example, be tempted to accept an inadequate settlement offer on

12  the class claims in exchange for a larger settlement on her

13  personal injury claims or, alternatively, be motivated to proceed

14  to trial when it may be in the best interest of the class to

15  settle.  See, e.g., Georgine v. Amchem Prods., Inc., 83 F.3d 610,

16  630-31 (3rd Cir. 1996) (finding the intra-class conflict between

17  class representatives presently injured by asbestos and possible

18  future plaintiffs who were exposed but not yet injured precluded

19  the class from meeting the adequacy requirement).  The court

20  therefore finds there is a potential conflict of interest between

21  plaintiff and the class members due to plaintiff's individual

22  personal injury claims.

23         Further, the "second adequacy inquiry is directed to

24  the vigor with which the named representatives and their counsel

25  will pursue the common claims." Hanlon, 150 F.3d at 1021.  The

26  credibility and honesty of a class representative are relevant

27  "because an untrustworthy plaintiff could reduce the likelihood

28  of prevailing on the class claims." Harris v. Vector Mktg.

1  Corp., 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation

2  omitted).  "There is 'inadequacy only where the representative's

3  credibility is questioned on issues directly relevant to the

4  litigation or there are confirmed examples of dishonesty, such as

5  a criminal conviction for fraud.'"  Id. (citation omitted).

6          In this case, defendant contends that plaintiff

7  spoliated the cellphone with which she allegedly reported her

8  claim to defendant's customer service department and failed to

9  preserve any evidence related to the phone, such as bills or text

10  messages.  (Def.'s Opp'n at 35.)  Even if plaintiff destroyed the

11  phone by accident, defendant argues, this demonstrates her lack

12  of appreciation for her responsibilities as class representative.

13  (Id.)  Plaintiff, however, denies having destroyed the phone and

14  claims that when she went to look for the old phone she

15  discovered the box was empty.  (Pl.'s Reply at 15 (Docket No.

16  140).)  Given that the question of whether plaintiff spoliated

17  the phone is disputed, it would be premature to find plaintiff is

18  not credible on this ground.  Nevertheless, plaintiff's

19  credibility regarding preservation of this evidence does have the

20  potential of "jeopardiz[ing] the interests of absent class

21  members."  Harris, 753 F. Supp. 2d at 1015.

22          Due primarily to the potential conflict of interest

23  between plaintiff and the class members because of plaintiff's

24  individual personal injury claims, the court must conclude that

25  plaintiff is an inadequate representative of the class under Rule

26  23(a).

27  III. Plaintiff's Evidentiary Objections

28          Plaintiff objects to and requests that the court

10

1   disregard in their entirety the declarations of defendant's

2   experts Kurt Brietenkamp, Mark Sanders, and Richard L. Stern

3   pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

4   U.S. 579 (1993) and Federal Rule of Evidence 702.  (Docket Nos.

5   141, 141-1, 141-2.)  The court did not rely on the contested

6   declarations in its analysis and therefore need not rule on

7   plaintiff's evidentiary objections.

8   IV.   Defendant's Motion for Sanctions

9           Defendant moves for sanctions against plaintiff for

10  alleged spoliation of evidence pursuant to the court's inherent

11  authority.  (Docket No. 128.)  Defendant contends plaintiff

12  spoliated the Verizon flip phone on which she allegedly called

13  and texted customer service, friends, and family regarding the

14  line cord rupture on her styling iron in February 2014 and failed

15  to preserve any evidence related to the phone, such as bills or

16  text messages.  (Def.'s Mot. for Sanctions at 3, 6 (Docket No.

17  128-1).)  Defendant asks that the court issue sanctions

18  preventing plaintiff from presenting testimony regarding the

19  February 2014 phone calls and texts or, at a minimum, that the

20  court provide an adverse inference instruction to the jury.

21          When asked about the flip phone during her July 16,

22  2015 deposition, plaintiff stated that she had replaced her flip

23  phone with an Apple iPhone but that she still had the flip phone

24  at home.  (Def.'s Mot for Sanctions Ex. C, Wilson Dep. 115:5-24,

25  116:1-3 (Docket No. 128-6).)  Defense counsel advised: "Please do

26  not destroy it or do anything with it, and give it to your

27  counsel."  (Id. at 116:4-5.)

28          In response to a subsequent request for production of

11

1   all text messages sent on the phone relating to the styling iron

2   failure, plaintiff's counsel replied: "Following her deposition

3   Ms. Wilson conducted a reasonable and diligent search for her

4   formerly used cell phone and discovered it is no longer in her

5   possession, custody, or control."   (Id. Ex. L, Pl.'s Resps. &

6   Objs. to Req. for Produc. of Docs. Set Six at 4 (Docket No. 128-

7   15).)   Plaintiff found the box for the flip phone but it was

8   empty.   (Pl.'s Reply at 15.)   Plaintiff now thinks that she might

9   have donated the phone or left it at the Verizon store when she

10   went in for help transferring service from the flip phone to her

11   iPhone in June 2014.   (Pl.'s Opp'n, Wilson Decl. ¶ 9 (Docket No.

12   147-11).)

13              It is premature to decide whether to preclude

14   plaintiff's testimony regarding the February 2014 phone calls and

15   texts at this early stage of the proceedings.   That decision will

16   more appropriately be made at the time of trial, when the court

17   can weigh the probative value and prejudicial effect of the

18   evidence and consider alternative remedies.   Accordingly,

19   defendant's motion to exclude plaintiff's testimony or, at a

20   minimum, provide an adverse inference instruction, will be denied

21   without prejudice to its timely renewal, as appropriate, at

22   trial.

23              IT IS THEREFORE ORDERED that plaintiff's motion for

24   class certification (Docket No. 124) be, and the same hereby is,

25   DENIED;

26              IT IS FURTHER ORDERED that plaintiff's evidentiary

27   objections (Docket No. 141) be, and the same hereby are,

28   DISMISSED as moot;

1          IT IS FURTHER ORDERED that defendant's motions to

2    strike (Docket Nos. 143, 145) be, and the same hereby are,

3    DISMISSED as moot.

4          IT IS FURTHER ORDERED that defendant's motion to

5    exclude plaintiff's testimony regarding the February 2014 phone

6    calls and texts or, at a minimum, provide an adverse inference

7    instruction (Docket No. 128) be, and the same hereby is, DENIED

8    without prejudice to its timely renewal at trial.

9

10   Dated:   June 3, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28